UNITED STATES *v.* WM. H. MASSON (P. J. McEVOY) (No. 3977)[1]

United States Court of Customs and Patent Appeals, November 9, 1936·

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Daniel I.* *Auster*, special attorneys, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

---

[1] T. D. 48669.

238

[Oral argument October 14, 1936, by Mr. Folks and Mr. J. Stuart Tompkins]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Garrett, Judge, delivered the opinion of the court:

This is a reappraisement proceeding, arising under the Tariff Act of 1930, in which the Government has appealed from a judgment of the United States Customs Court, First Division, affirming the judgment of the single judge, sitting in reappraisement.

The merchandise consists of cloth used in making gowns and habits for nuns.

The appraiser at the port of entry, Baltimore, Md., held that the merchandise had no foreign or export value, as defined by sections 402 (c) and 402 (d), respectively, of the Tariff Act of 1930, and, therefore, appraised it on the basis of United States value, as defined in section 402 (e) of said act.

The evidence offered on behalf of the importer consists of the oral testimony of H. G. Rineer, appraiser of merchandise at the port of Baltimore, Md.; the oral testimony of M. J. Cromwell, president or P. J. McEvoy, Inc., the actual importer of the involved merchandise; an affidavit, marked Exhibit 2, by A. Dancie, director of Divry & Co., of Paris, France, manufacturers of and sellers of some of the imported goods, and an affidavit, marked Exhibit 3, by A. Dugenie, of Paris, France, who manufactured and sold the other imported goods; also there was filed as exhibits samples of the imported merchandise and samples of other merchandise claimed to be similar to that imported.

The evidence offered on behalf of the Government consists of two reports (one of them being a certified copy) of two Treasury representatives who visited the respective manufacturing concerns and made certain investigations there. These reports are marked Exhibits 4 and 5, respectively.

Upon appeal by the importer to reappraisement, the single judge held that both foreign and export values had been proven; that the export value was not higher than the foreign value, and that the invoiced or entered value correctly represented the foreign value and constituted the correct dutiable value. In his decision the single judge analyzed the evidence in the case, stating his reasons for accepting certain evidence offered on behalf of importer instead of evidence apparently contradictory thereto offered on behalf of the Government.

In its decision upon appeal to it by the Government, the appellate division supplemented to some extent the analysis of the evidence made by the single judge, and affirmed his decision, making substantially the same findings of fact which he made, except that the decision expressly found that one of the reports does not "indicate the untruth or incorrectness of Exhibit 2."

It is our view that the opinions of the single judge and the appellate division, whether taken separately or together, show a proper and complete consideration and weighing of the testimony in making the findings of fact required by the statute to be made.

In the appeal to this court the Government makes twenty-five assignments of error. Some of these seem plainly to invite us into the fields of evidence-weighing and fact-finding, fields not open to us because of the statute which definitely limits us to questions of law only in reappraisement cases. Section 501, Tariff Act of 1930.

As we view the case, the only questions of moment presented by the assignments of error, which we are at liberty to determine, are those relating to the "probative value" of the affidavits of Dancie and Dugenie and the "probative value" of the oral testimony of the witness Cromwell. These are covered in the main in the assignments of error 7 and 12, respectively, which allege that the trial court erred:

(7) In not finding and holding as a matter of law that Exhibits 2 and 3 [the affidavits of Dancie and Dugenie] are without probative value.

*     *     *     *     *     *     *

(12) In not finding and holding that the Trial Court erred in failing to find and hold that the testimony of plaintiff's witness Cromwell had no probative value in view of the fact that he did not know whether the order was general or special.

The Government attacks the "probative value" of the affidavits (meaning thereby, as we understand it, that they should be rejected *in toto* as a matter of law) upon two grounds. It is asserted as "Point I", in the Government brief:

The affidavits made by A. Dancie and A. Dugenie, Exhibits 2 and 3, supra, under all the circumstances, are of no probative value, because the statements made therein are in conflict with the statements made over a year earlier to the Treasury representatives by these same parties.

As "Point II", the brief says:

The statements contained in Exhibits 2 and 3 are insufficient in form and detail, together with the testimony of plaintiff's witness Cromwell to prove a foreign or export value.

We think it perfectly evident that the Government's point I, *supra*, does not present a question of law, such as this court may pass upon. Conceding the conflict alleged, that surely is a matter which goes only to the weight which should be given, respectively, to the affidavits and to the reports of the Treasury representatives. The affidavits having been received may not be disregarded simply because certain of their matter is contradicted, any more than the reports of the Treasury representatives contradicting them might properly be thrown out for the same reason, and we are not impressed with the argument that because the statements, alleged to have been made, were made to the Treasury representatives "over a year earlier" than the affidavits were made, the latter should be rejected as a matter of

law. Doubtless the claimed inconsistency between the affidavits and the alleged statements received due consideration by the tribunals below in weighing the evidence.

The second point alleges that the affidavits "are insufficient in form and detail", and, as we understand the contention, should for that reason be rejected *in toto*, along with the oral testimony of the witness Cromwell, rejection of which latter is insisted upon because, it is claimed, his testimony is "a statement of conclusions, rather than facts and that his knowledge of market conditions were obtained in the Fall of 1932, several months prior to the exportation of the merchandise now at issue." Also, the sufficiency of his testimony upon the question of "similarity" is challenged.

It will be noted that assignment of error No. 12, *supra*, claims that Cromwell's testimony had no probative value "in view of the fact that he did not know whether the order was general or special."

This assignment is not discussed in the brief on behalf of the Government and we have found it impossible to determine its meaning. It will not, therefore, receive further consideration at our hands There is no specific assignment other than No. 12 which alleges the lack of "probative value" in Cromwell's testimony, but it is said, in effect, in assignment No. 6, and argued in the brief, that it was error to give certain portions of it weight for reasons, the substance of which has been already herein stated.

As to the allegation that Cromwell's information respecting market conditions was obtained in the Fall of 1932, the opinion of the single judge, in particular, is quite specific in pointing out that:

When asked on cross-examination by the attorney for the defendant whether he was familiar with the market prices of the same or similar merchandise as involved in these importations between May 1933 and October 1933, he answered that he was and received this knowledge by communicating with manufacturers of this material in France nearly every month, giving orders, getting prices, etc.; and that the manufacturers' prices of this merchandise change but very little at any time.

When the testimony so pointed out is fairly considered in connection with Cromwell's testimony as to what information he obtained in 1932, the substance of which is also stated in the opinion of the single judge, we think it may not be rejected as having no "probative value", and the question of what weight should be given it is one for the tribunals below. We think also that there is some substantial evidence to support the findings of the tribunals below upon the issue of similarity in the samples offered in evidence.

Turning to the affidavits, assignment of error No. 7 is simply that as a matter of law they should have been held to be without "probative value." The first reason urged in support of this allegation we have already discussed and passed upon.

The second reason advanced is that they are "insufficient in form and detail" and the argument relating to this point is based, in part, upon the use by both affiants of the word "customers" instead of the word "purchasers."

Section 402 (c) of the Tariff Act of 1930 reads:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale *to all purchasers* in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Italics ours.]

Neither of the affidavits anywhere uses the word "purchasers."

The affidavit of Dancie states:

* * * I have thorough knowledge of the market conditions for such merchandise obtaining in France, and of the prices and market values which prevailed in France during all of the year 1933 for wool cloths, serges and wool dress goods, quality numbers 16086, 16265, 16429, 16292 and 16088, specified in Divry & Co.'s invoices to P. J. McEvoy, Inc., Baltimore, Maryland. * * *.

A list of those invoices and prices is then given, and of the prices the affidavit says that:

[they] are the prices at which, on the dates when those invoices were certified, I was willing to sell and was freely offering for sale such or identically the same merchandise in similar usual wholesale quantities to any and all of *my customers* in France and in all other countries including the United States.

After reciting, in substance, that the fabrics in question are used for making uniforms for nuns and Catholic orders whose members wear "identically uniform dresses the world over", and that the dresses so used are made of the same material "whether they are worn or used in the United States or in Canada, or in France, or in the Far East", the affidavit says:

Consequently, irrespective of whether these goods are manufactured by Divry & Co., or by some other manufacturer in France, they have to be and are made the same or identically similar; and the qualities above-named which we have delivered to P. J. McEvoy, Inc., are not different from the fabrics and the qualities which we sell to anybody else in the world for like usages.

We deem it unnecessary to detail the statements of Dugenie's affidavit. The opinion of the appellate division does this sufficiently. He asserts familiarity with the "market values, prices, and conditions" which prevailed in France in the year 1933 with respect to goods "like those specified in my invoices to P. J. McEvoy, Inc."; sets forth the invoices and prices, and states that such prices were the prices at which on the various dates, when the invoices were certified:

I was willing to sell and was freely offering for sale to all of my customers buying in wholesale quantities in France, and in the United States, all fabrics and dress goods of identically the same character, quality, width, and texture * * *.

His affidavit also gives a list of sales "of cloths the same as or identically similar to those covered by my five invoices above named to P. J. McEvoy, Inc.," claimed to have been made during the period covered by the importations here involved, to other customers, as well as some other sales to McEvoy. The principal one of such other customers named in the list is Les Industries Textiles Reunies, Paris, France. Indeed, in the list printed in the record we find no other French customers named, but there is a statement to the effect that sales were made to G. Berrogain, whose address is not given, and the list contains one item, saying:

I have sold:
Invoice October 14th, 1933, for New York through (D. Roditi & Sons):

    \*      \*      \*      \*      \*      \*      \*

The prices at which such other sales were claimed to have been made are given in the list, and in practically all instances samples were filed as exhibits to the affidavit. The affidavit states that,

irrespective of whether said sales were made to P. J. McEvoy, Inc., Les Industries Textiles Reunies, or to G. Berrogain, the fabric was identically the same in quality, kind, and character,

and referring to these lists, the appellate division found:

Included in the affidavit are sales made in 1933 of this merchandise in France at prices corresponding to the invoice prices [of the involved merchandise] or equivalent thereto.

The fact that in the affidavits the word "customers" is used instead of the statutory word "purchasers" is not regarded by us as, of itself, constituting a ground for holding, as a matter of law, that the affidavits are "insufficient in form," and, for that reason, "without probative value," in the sense in which we understand Government counsel to use here the phrase "probative value." We think that, taking the pertinent parts of the texts of the affidavits together, the meaning conveyed, and intended to be conveyed, by "customers" was that of "purchasers from" the affiants, and that where an affiant spoke of "all of my customers" he meant all purchasers from him or his company. In common parlance, a purchaser is a customer and a customer is a purchaser.

Insofar as that part of the contention respecting the affidavits being insufficient "in detail" is concerned, it should be observed that the decision of the appellate division does not rest solely upon the affidavits. Just what the tribunals of the Customs Court might have decided had this case been presented alone upon the affidavits of Dancie and Dugenie, or alone upon the oral testimony of Cromwell, or alone upon the reports of the Treasury representatives, we do not know. It may well be that no one of these would have been regarded as being complete enough within itself to constitute substantial

evidence sufficient to establish foreign value in accordance with the statutory requirement. But the court's decision which led to its judgment does not rest upon any one of those taken singly. It rests upon the record taken as a whole, as the opinions of both the single judge and the appellate division clearly show.

The Government in all the multiplicity of errors assigned does not present one specifically alleging that there is no substantial evidence to support the judgment, but attacks the evidence piecemeal as hereinabove recited. In view of our conclusion upon such questions of law as are involved, viz., that the allegations as to lack of probative value in the oral testimony of Cromwell and the affidavits of Dancie and Dugenie are not well taken, we are not prepared to hold that there is no substantial evidence to support the findings below.

Accordingly, the judgment of the United States Customs Court is *affirmed*.